IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INNA BREZ,** | Civil No. 1:14-cv-1245 |
| **Plaintiff,** | |
| v. | |
| **SECRETARY OF VETERANS AFFIARS ROBERT A MCDONALD,** | |
| | **Judge Sylvia H. Rambo** |
| **Defendant.** | |

# M E M O R A N D U M

In this civil action invoking federal question jurisdiction under 28 U.S.C. § 1337, Plaintiff brings a claim for violation of Title VII of the Civil Rights Act of 1964 under 42 U.S.C. § 2000e-2 for discrimination based on her national origin. Presently before the court is Defendant's motion for summary judgment. For the reasons stated herein, the motion will be granted.

## I. Background

In considering Defendant's motion for summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Plaintiff as the nonmoving party in accordance with the relevant standard when deciding a motion for summary judgment. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

### A. Facts[1]

Plaintiff Inna Brez was born in the Ukraine, came to the United States in September 1990, and became a United States citizen in 2005. (Doc. 22-1, Brez Dep., pp. 20:6-8, 22:3-8.) In September 2006, she began working as a contractor in the billing department for the Department of Veterans Affairs ("VA") in Brooklyn, New York, and was later transferred with that department to Lebanon, Pennsylvania. (*Id.* at 26:3-17, 28:3-25.) In September 2012, the Lebanon VA hired Plaintiff as a medical reimbursement technician in the North East Consolidated Patient Account Center ("NECPAC") to begin a one-year probationary period. (*Id.* at 29:1-9; Doc. 22-2, p. 3.) At her deposition, Plaintiff testified that it was her understanding that, during the probationary period, "if I do something wrong, if I don't follow chain of command or anything happen, they can just terminate me or if I don't do what they ask for quality, quantity, productivity, that I'm not qualified for the position." (Brez Dep., p. 29:17-23.)

Plaintiff's direct supervisor, Meredith Hopkins ("Ms. Hopkins"), found Plaintiff to be "rude" and "loud," and often observed her interrupting her coworkers and supervisors. (Doc. 22-3, pp. 1-2.) Conversely, Plaintiff felt that Ms. Hopkins was "rude" and disregarded her prior experience with the VA because she

---

[1] These facts are taken from Defendant's statement of material facts and supporting exhibits, including Plaintiff's deposition. Notably, Plaintiff has failed to submit any response to Defendant's motion, including a counter-statement of facts, as required by the local civil rules. *See* L.R. 56.1.

was from New York. (Brez Dep., pp. 48:3-13, 63:1-11, 89:7-23.) However, Plaintiff acknowledged that Ms. Hopkins treated other "American" employees in a similar manner. (*Id.* at 89:7-90:12.)

Plaintiff further testified that, despite processing a large volume of billing claims, she occasionally sought advice and clarification from Ms. Hopkins regarding billing procedures. (*Id.* at 49:4-9, 53:7-21.) However, Ms. Hopkins seemed to have trouble understanding her accent, and, on one occasion, told her to "use English." (*Id.* at 54:3-55:14.) Ms. Hopkins denied making any such remark and instead explained that, while she understood Plaintiff's accent, she often had difficulty understanding the methods and processes that Plaintiff was trying to convey. (Doc. 22-3, p. 3.) Whenever she sought clarification, Plaintiff immediately would become defensive as if Ms. Hopkins was questioning her abilities. (*Id.*) On October 24, 2012, Ms. Hopkins verbally counseled Plaintiff for being rude and interrupting her co-workers. (*Id.*)

Three specific instances occurred for which Plaintiff was ultimately fired. In the first incidence on February 7, 2013, Plaintiff went to another supervisor about a billing issue, despite Ms. Hopkins' direction to follow the chain of command and speak directly to her about any such problems. (Doc. 22-3, p. 2; Doc. 22-4, p. 2.) Plaintiff testified that she broke the chain of command because Ms. Hopkins was not available. (Brez Dep., pp. 63:16-64:2.) However, Plaintiff also stated that, at

times, when she was not satisfied with Ms. Hopkins' response to her questions, Plaintiff would wait until Ms. Hopkins left the office and then seek advice from other supervisors. (*Id.* at 51:18-53:4.)

The second incident involved a series of events on February 13, 2013. Initially, Plaintiff became argumentative with Ms. Hopkins over a billing issue, and later that same day, allegedly got into an argument with a co-worker regarding an assignment and stormed out of the room. (Doc. 22-3, p. 2; Doc. 22-4, pp. 2-3.) While Plaintiff denies that an argument occurred, she admits that she may have seemed argumentative and rude because, as a Ukrainian, it is in her nature to speak loudly. (Brez Dep., pp. 68:12-69:25.) Plaintiff then returned to Ms. Hopkins' office to discuss the assignment, but Ms. Hopkins was meeting with another employee and had to ask Plaintiff to leave three times before she complied. (*Id.*)

The final incident occurred on February 25, 2013, when Plaintiff became argumentative and repeatedly interrupted Ms. Hopkins as she tried to assist her with a billing report. (Doc. 22-3, pp. 2-3; Doc. 22-4, p. 3.) Plaintiff testified that Ms. Hopkins was being rude to her and that, as the best biller on the team, she should have been treated with more respect. (*Id.* at 73:12-25.)

Subsequent to these incidents, Ms. Hopkins recommended to Dennis Wesner, the Chief Operating Officer, that Plaintiff receive written counseling regarding her behavior. (Doc. 22-3, p. 3, Doc. 22-4, p. 3.) Mr. Wesner discussed

this recommendation with Vonda Barton, the then-Director of NECPAC, who determined that Plaintiff should be terminated based on the seriousness of her misconduct, the prior attempts at counseling, and the fact that she was still in her probationary period. (Doc. 22-4, p. 3.) Mr. Wesner agreed that Plaintiff's behavior was unlikely to improve with additional counseling. (*Id.*) Ms. Barton provided this termination recommendation to Joyce Deters, Director of CBO Work Management, who also agreed with the recommendation. (*Id.*) Ms. Deters provided Plaintiff with a "Termination During Probationary/Trial Period" letter dated March 22, 2013, which detailed the three incidents as the reasons for her termination. (*Id.*; Doc. 22-5.) Plaintiff testified that she never spoke with Mr. Wesner and is unsure whether Mr. Wesner or Ms. Barton knew that she was from Ukraine or had an accent. (Brez Dep., pp. 78:15-17, 80:1-12, 100:16-101:3.)

    **B.**   **Procedural History**

On April 22, 2014, Plaintiff initiated this action by filing a complaint in the Eastern District of Pennsylvania proceeding *in forma pauperis*. (Docs. 1-3.) This matter was transferred to the Middle District of Pennsylvania on June 27, 2014. (Doc. 9.) As Plaintiff was preceding *pro se*, she was provided with a standard practice order for *pro se* litigants detailing, among other requirements, the court's local rules. (Doc. 11.) On July 2, 2014, the court sent a letter to the *Pro Bono* panel of the Middle District of Pennsylvania Chapter of the Federal Bar Association

5

seeking a volunteer to represent Plaintiff. (Doc. 13.) The court also postponed any case management order pending a response from the *Pro Bono* Panel.

This matter was stagnant for some time before Defendant filed a motion for summary judgment, brief in support, and statement of facts on January 11, 2017. (Docs. 20-22.) The court stayed Defendant's motion and renewed its efforts to locate *pro bono* counsel. (Doc. 24.) On May 3, 2017, the court notified Plaintiff that it had not received a reply from the *Pro Bono* Panel and ordered Plaintiff to respond to Defendant's motion for summary judgment by June 2, 2017. (Doc. 25.) As of the date of this memorandum, Plaintiff has not filed any response.

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.*

When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The moving party bears the initial burden of demonstrating the absence of a disputed issued of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.

### III. <u>Discussion</u>

At the outset, the court must emphasize that Plaintiff has failed to file any response to Defendant's motion for summary judgment despite being provided considerable time to do so. As Local Rule 7.6 provides, any party who fails to file an opposing brief shall "be deemed not to oppose such motion," the court could grant Defendant's motion on this ground alone. However, out of an abundance of caution, the court will address the merits of this case. *See, e.g.*, McWilliams v. Snyder, Civ. No. 12-cv-212, 2013 WL 5525091 (M.D. Pa. Oct. 3, 2013).

7

Title VII endeavors to ensure that workplaces are free of discrimination and that employment decisions are made based on qualifications rather than on extraneous factors such as race or national origin. *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (citing *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009)). To that end, "Title VII makes it illegal for an employer to 'limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e-2(a)(2)). For a disparate treatment claim such as this one, Plaintiff must establish that her Ukrainian origin "played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process." *Ulitchney v. Potter*, Civ. No. 04-cv-0991, 2006 WL 1722391, *2 (M.D. Pa. 2006) (quoting *Monaco v. Amer. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004)). Plaintiff can meet this burden by presenting either direct or circumstantial evidence. *Klimczak v. Shoe Show Co.*, 420 F. Supp. 2d 376, 381 (M.D. Pa. 2005). In the absence of direct evidence, Plaintiff must rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish circumstantial evidence. *Id*. (citing *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990)).

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of national origin discrimination by showing: (1) membership in a protected group; (2) qualification for the position in question; (3) an adverse employment action; and (4) that the circumstances of the adverse employment action give rise to an inference of discrimination. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 2014 F. App'x 239, 241-42 (3d Cir. 2007). If she makes this initial showing, the burden shifts to Defendant to provide a "legitimate, non-discriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden is light and can be satisfied by proving "that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason," but proof of actual causation is not required. *D'Altilio v. Dover Twp.*, Civ. No. 06-cv-1931, 2009 WL 2948524, *7 (M.D. Pa. Sept. 14, 2009). The burden then shifts back to Plaintiff to prove that a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Prix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997).

In the case at hand, Plaintiff satisfies three of the *prima facie* requirements: (1) she is Ukrainian; (2) she was qualified for the medical reimbursement technician position due to her previous employment; and (3) she was fired from her

position. The fourth prong requires Plaintiff to prove, by direct or circumstantial evidence, that she was fired due to her Ukrainian origin. Because Plaintiff has not presented any direct evidence of discrimination, she must establish that Defendant replaced her with someone who is not Ukrainian or that she was "treated differently than similarly-situated, non-protected employees." *D'Altilio*, 2009 WL 2948524 at *8 (citations omitted).

During her deposition and the hearing conducted by the VA Office of Resolution Management, Plaintiff provided no testimony that she was replaced by a non-Ukrainian. Furthermore, Plaintiff did not testify that she was treated differently than other non-Ukrainian employees or other probationary employees who failed to follow office protocol or appeared argumentative with their supervisor or co-workers. Instead, Plaintiff testified that Ms. Hopkins treated her poorly because she was from New York, not the Ukraine, and that Ms. Hopkins exhibited similar conduct toward "American" employees. Ultimately, it appears that the entire basis for Plaintiff's claim stems from Ms. Hopkins being confused by Plaintiff's questions rather than any national origin discrimination. In sum, Plaintiff's own testimony has failed to provide any direct or circumstantial evidence to satisfy the fourth prong of her *prima facie* burden. Thus, the court will grant Defendant's motion.

## IV. **Conclusion**

For the reasons stated herein, the court will grant Defendant's motion for summary judgment. An appropriate order will issue.

s/Sylvia Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: October 5, 2017